UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL SMITH,

    Plaintiff,

v.                                               Case No. 8:23-cv-2383-LSG

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

The plaintiff Michael Smith appeals the denial of his claim for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"). Docs. 1, 22. As explained in this order, I affirm the Commissioner's decision because the ALJ correctly applied the law and possessed substantial evidence for his decision.

    **I.**     **Procedural Background**

In May 2019, Smith applied for a period of disability, disability insurance benefits, and supplemental security income and alleged that his disability began on June 9, 2015. Doc. 1 at 2; Tr. 364–79. The Commissioner denied Smith's claims initially and on reconsideration. Tr. 216–18, 219–21, 225–50. Smith requested an administrative hearing, which occurred on November 13, 2020. Tr. 251–52. Smith appeared and testified. Tr. 77–108. The ALJ's decision after the hearing was

---

[1] The parties consent to the exercise of jurisdiction by a United States Magistrate Judge. Docs. 13, 14.

unfavorable. Tr. 181–204. Smith sought review by the Appeals Council, which vacated and remanded the case because the ALJ failed to proffer evidence received after the hearing and entered into the record. Tr. 210–15. A second hearing occurred on July 20, 2022. Tr. 40–71. The ALJ's decision was again unfavorable. Tr. 7–26. Smith appealed the ALJ's second decision to the Appeals Council. Tr. 354–57. The Appeals Council found no error in the ALJ's second decision and instructed Smith that the decision would be final pending appellate review. Tr. 1–6. Smith timely filed a complaint in this Court, Doc. 1, and the case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Smith was forty years old when his alleged disability began. Tr. 109, 123. His impairments include depression, arthritis in his left hand and lower back, type two diabetes, and an ocular ulcer in his right eye. T. 109, 407. Smith dropped out of high school in the eleventh grade. T. 25, 475. He attended a culinary arts program. T. 408, 475. Smith's occupational history includes work as a cook in a restaurant, a construction worker, and an apprentice for an electric company. Tr. 408. He sometimes resides with his mother and occasionally with friends. Tr. 53, 90.

The ALJ concluded that Smith satisfies the insured status requirements of the Social Security Act through September 30, 2015, and that he has engaged in no substantial gainful activity from his alleged onset date of June 9, 2015. Tr. 13. After a telephonic hearing and reviewing the evidence, the ALJ determined that Smith had severe impairments, including cervical strain, thoracic strain, status-post amputation

of the distal half of the right 4th and 5th digits of the right hand, mild degenerative disc disease of the lumbar spine, mild osteoarthritis of the left fingers and thumb, right foot ulcer, diabetes mellitus, diabetic retinopathy, corneal ulcer, cataract of the right eye, and high ulnar palsy of the left upper extremity with trigger finger of the left thumb. Tr. 13.  Nonetheless, the ALJ determined that Smith suffers no impairment or combination of impairments that "meets or medically equals" the severity of the listed impairments in 20 C.F.R. Part 104, Subpart P, Appendix 1. Tr. 20. The ALJ concluded that Smith had a residual functional capacity to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b) "except no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing (ramps, stairs, ladders, ropes, and scaffolds)" and "no more than frequent fingering and handling with the right upper extremity." Tr. 20.

     In formulating Smith's residual function capacity, the ALJ considered medical opinions and prior administrative medical findings, Smith's testimony, and "function reports" completed by Smith and his mother. Tr. 20–21. The ALJ found that despite Smith's subjective report of limitations, "the objective evidence is extremely limited." Tr. 21. The ALJ found that, although Smith's impairments limit his ability to work, they did not limit him as much as Smith alleges. The ALJ further found inconsistencies with Smith's reported work activity, identifying three instances in which Smith claimed he was "laid off," had come home from work "wiped," and otherwise worked after 2015. Tr. 23.

The ALJ found that Smith's previous residual function capacity was "too restrictive" for a return to his previous work as a cook. Tr. 24. Based on the testimony of a vocational expert, the ALJ concluded that Smith could return to work and perform the functions of a "sales attendant," a "counter attendant," and a "merchandise maker." Tr. 25. Thus, based on Smith's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined that Smith is not disabled. Tr. 25–26.

### III.   Standard of Review

Entitlement to SSDI benefits requires a "disability," meaning the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" likely to result in death, lasting for at least twelve months, or expected to last more than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" means a condition resulting from "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Social Security Administration ("SSA") regulations establish a five-step "sequential evaluation process" to determine whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must determine whether the claimant (1) is engaged in "substantially gainful activity," (2) has a severe impairment, (3) has a severe impairment that "meets or equals" the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) can perform the claimant's past relevant work, and

(5) can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant may obtain benefits only if unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

This Court must affirm if substantial evidence and applicable law support the Commissioner's decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

"When deciding whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner." *Hill v. Comm'r of Soc. Sec.*, No. 2:24-CV-64-KCD, 2024 WL 4719493, at *1 (M.D. Fla. Nov. 8, 2024) (citing *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the scope of review is limited to determining whether substantial evidence supports the

5

Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Smith argues on appeal that the ALJ erred by failing to comply with Social Security Ruling ("SSR") 16-3p in evaluating Smith's subjectively reported symptoms. Doc. 22 at 6. In response, the Commissioner argues that the ALJ properly considered Smith's subjective statements and possessed substantial evidence for his findings. Doc. 24 at 13–14.

During the fourth step of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine residual functional capacity, "[t]he ALJ must consider the [claimant's] medical condition taken as a whole." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). The ALJ must consider all relevant evidence as to what a person can do in a work setting despite physical or mental limitations caused by the person's impairments and related symptoms. *Semidey v. Kijakazi*, No. 8:20-cv-2310-AEP, 2022 WL 4464840, at *3 (M.D. Fla. Sept. 26, 2022) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). To determine a person's residual functional capacity, the ALJ should evaluate (1) all medical opinions, together with the other record evidence and (2) all medically determinable impairments, including those that are not severe, and the total limiting effects of each. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) &

(e), 416.920(e), 416.945(a)(2) & (e)). In doing so, the ALJ may consider evidence such as the person's medical history; medical examination and laboratory findings; reported daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of pain or other symptoms; any treatment, other than medication, the person receives or has received for relief of pain or other symptoms; and any other factors affecting the person's functional limitations. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3), 416.929(c)(3)(i)–(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

The ALJ must also consider subjective statements about pain or other symptoms. 42 U.S.C. § 423(d)(5)(A). Although a person's testimony is not conclusive evidence of a disability, the ALJ must consider the extent to which the alleged symptoms "can reasonably be accepted as consistent" with the available evidence. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529, 416.929. If a person attempts to establish a disability based on subjective statements, that person must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom or (2) that one could reasonably expect the medical condition to cause the alleged symptom. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929. In other words, the claimant must introduce evidence supporting his claim that his symptoms, including any side effect of treatment, prevent him from working. *See Walker v. Comm'r of Soc.*

7

*Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010). The Commissioner, in turn, considers whether a "medically determinable impairment . . . could reasonably be expected to produce" the symptom. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3–*9. The Commissioner then evaluates the intensity and persistence of the symptom to determine the extent to which the symptom limits the ability to perform work-related activity. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3–*9. This consideration is not limited to the person's statements about his symptoms. 20 C.F.R. §404.1529(c)(3). The Commissioner may consider other evidence, including the claimant's work record, medical records, daily activities, and medication. *Id.* Thus, the Commissioner evaluates the statements "in relation to the objective medical evidence and other evidence[.]" 20 C.F.R. §404.1529(c)(4).

    The ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony. *Wilson*, 284 F.3d at 1225. The "[f]ailure to articulate the reason for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* A reviewing court will not disturb a clearly articulated finding about a person's subjective complaints if supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*). Thus, the ALJ must provide more than a broad rejection of a person's statements but need not cite "particular phrases or formulations." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Here, Smith contends that the ALJ incorrectly evaluated his subjective testimony about his blurred vision and symptoms in his left eye. Specifically, Smith argues that the ALJ's decision violates Social Security Ruling 16-3p because the ALJ failed to provide specific reasons for "discounting" his testimony about the side effects of his eye injections. Doc. 22 at 3, 6.

After a careful review of the ALJ's decision, I find that the ALJ properly considered Smith's testimony about his symptoms and supported the findings with substantial evidence. *See Mitchell*, 771 F.3d at 782; *Foote,* 67 F.3d at 1562. The ALJ adequately explained his reasons for concluding that Smith's subjective complaints were inconsistent with the medical record. *See Dyer*, 395 F.3d at 1212.

The decision thoroughly summarizes the reviewable medical evidence and acknowledges the two-step process for considering symptoms when analyzing whether a claimant is disabled. Tr. 21. Describing Smith's post-filing impairments in a lengthy summary of the evidence, the ALJ explains that Smith received intraocular injections in his left eye on February 4, 2020, August 11, 2020, June 8, 2021, and December 14, 2021. Tr. 15, 16, 17. The ALJ acknowledges that Smith reported blurred vision during those exams and that his visual acuity in his left eye was reported as 20/40, 20/30, 20/25-2, and 20/40 respectively. Tr. 15, 16, 17. The ALJ notes that Smith's vision in his left eye is diminished, Tr. 16–18, 21, and that Smith is effectively blind in his right eye, Tr. 21. Citing the medical record, the ALJ concludes that the findings of Smith's vision exams were "mild" and that Smith's

"vague term 'blurry vision'" did not have more than a minimal impact on his functioning.[2] Tr. 18.

The ALJ also acknowledges Smith's hearing testimony about his vision and notes that, although he complained about "'blurriness' in his vision," Smith did not elaborate on his alleged symptoms in much detail. Tr. 21. The ALJ explains that "[t]he regular testing does note [Smith has] 20/30 to 20/40 vision, which is reduced, but not prohibitive in his ability to see." Tr. 21. The ALJ further concludes that

> [t]he vision records establish the claimant is limited to monocular vision, with his multiple right eye issues leaving him effectively blind in that eye (Exhibit 19F). While left vision is reduced, there is no indication it is not correctable or that he is struggling with visual activities, outside of his monocular vision.

Tr. 23. Ultimately, the ALJ held that the medical evidence shows that Smith suffers reduced vision in his left eye, but he is not totally blind, and that no objective evidence suggested that his symptoms affected his "visual activities." Tr. 21, 23.

The ALJ correctly evaluated Smith's subjective statements about the side effects of his eye treatment. Smith testified at the second hearing that he suffered visual impairments and headaches for a few days to "a couple weeks" after receiving intraocular injections in his left eye every two to three months. Tr. 47–48. Smith argues that the ALJ did not articulate specific reasons for "discounting" his testimony about the severity of his side effects, specifically his need periodically to

---

[2] The ALJ recognizes Smith's limitations, going so far as to say that the limitations were "more than reasonable given the mild findings in the objective testing." Tr. 23. However, the ALJ points out that Smith's "subjective complaints" about how his limitations affected his ability to work are inconsistent in the record. Tr. 23.

10

miss work. Doc. 22 at 5–6. However, notes in his medical record contradict Smith's assertion that the injections severely impaired his vision, showing that Smith could count fingers after receiving the injections. Tr. 1136, 1140, 1144, 1153, 1158, 1163, 1168. The record is devoid of evidence or testimony indicating Smith's headaches and blurry vision were disabling either alone or in combination with his other impairments. *See Green v. Soc. Sec. Admin. Comm'r*, 695 F. App'x 516, 522 (11th Cir. 2017); *Walker*, 404 F. App'x at 367. Further, no medical evidence corroborates Smith's testimony that he requires absences from work following each injection. *See Green*, 695 F. App'x at 522; *see also Rivero v. Comm'r of Soc. Sec.*, No. 2:16-cv-845-FtM-CM, 2018 WL 1466387, at *6 (M.D. Fla. Mar. 26, 2018). In his decision, the ALJ acknowledges Smith's testimony about his post-injection symptoms. Tr. 18, 21, 23. The ALJ properly weighs Smith's subjective statements against the record and describes the lack of record evidence supporting Smith's assertions. Tr. 18, 21, 23; *see Walker*, 404 F. App'x at 366.

Contrary to Smith's argument, the ALJ neither broadly rejected Smith's subjective testimony about his vision nor failed to support his findings. Instead, the ALJ articulates his findings through citations to the medical record, credit to Smith's complaints and testimony, and his overall analysis of the available evidence. Because the ALJ correctly applied the law and supported his findings with substantial evidence, I must affirm. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (discussing the court's "narrowly circumscribed nature of" appellate review in social security cases); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("Even if

we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.").

## V.     Conclusion

Accordingly, for the reasons explained above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner, terminate any pending motion, and close the case.

**ORDERED** in Tampa, Florida, on the 27th day of February, 2025.

_____
LINDSAY S. GRIFFIN
United States Magistrate Judge